Shroser *v.* Isaacs.

---

## ANTHONY SHROSER

*v.*

## WESLEY ISAACS.

Where land is by one deed conveyed to two or more persons who contribute to the purchase money in unequal amounts, their shares in the property will, in the absence of an agreement to the contrary, be in proportion to their respective contributions.

---

Bill for relief. On final hearing on pleadings and proofs.

*Mr. G. S. Cannon,* for complainant.

*Mr. P. S. Scovel,* for defendant.

Shroser *v.* Isaacs.

THE CHANCELLOR.

The complainant and defendant are Germans, who immigrated together to this country in 1854. The former is now about fifty-one years of age, and the latter about fifty-five. When they came to the United States, they were both single. Subsequently the defendant married, and his wife dying, he married his present wife. He has a family of children. The complainant has never married. They were farm laborers, and were both industrious. They have lived in this state ever since they came to this country. In March, 1869, the complainant, who had, as the result of his industry and frugality, the sum of $1,200, or thereabout, purchased from Timothy Keef, a dwelling-house and about thirteen acres of land, in Burlington county, at the price of $2,100, of which $1,200 were to be paid in cash, at or before the delivery of the deed, and the rest was to be secured by mortgage on the premises. With a view of availing himself of the greater experience of the defendant, and in view also of the close intimacy which had existed between them from the time of their immigration to this country, and which still existed, he proposed, as he alleges in his bill, to secure to himself the comforts of a home upon the property, by joining the defendant with him in the conveyance from Keef. He says it was accordingly agreed between him and the defendant, that the latter would furnish him with his " Sunday and idle board," would wash and mend his clothes, and take care of him in the event of his becoming sick or disabled, and permit him to have a room in the house for his life, and that in consideration thereof he, the complainant, would cause the conveyance of the property to be made to both of them together, and the defendant might, with his family, occupy and have the use of the premises.

The complainant states in his bill that the conveyance was accordingly made to him and the defendant together, although he paid the whole of the $1,200 which were to be paid on account of the purchase money, on the making of

the conveyance. On the delivery of the deed, a mortgage was given for $900 of the purchase money. It was executed by the complainant and defendant, and the wife of the latter. The bond, the payment of which it was made to secure, was signed by the complainant and defendant. Soon after the deed was delivered, the defendant entered upon the occupation of the property, and he has resided there with his family ever since.

The complainant, from the time when the defendant entered into possession, up to November, 1871, had a room in the house, and was boarded there by the defendant according to the agreement. His clothes were also washed and mended by the defendant's wife during that time, and although he paid her for these services, he appears to have done so voluntarily. In the month just mentioned, a quarrel took place between the complainant and the defendant and his wife, which resulted in a violent attack by the wife upon the complainant, in which she, with her husband's assistance, beat him. Since that time the complainant has had none of the advantages stipulated for in the agreement, but the defendant has had the sole and exclusive use and enjoyment of the property. It appears that, from time to time before the occurrence last mentioned, the complainant gave to the defendant money for permanent improvements which were made on the property, and that he paid the interest on the mortgage for the years 1870 and 1871, and in the former year he paid $400 on account of the principal.

The defendant alleges that the property was purchased by him and the complainant in partnership; that the latter did not in fact pay all of the consideration money which has been paid, but that the defendant paid $50 of the $1,200. He further alleges, in his answer, that in consideration of the agreement above stated, it was agreed that he was to be the owner of half of the property. Of that agreement, however, there never was any written evidence.

A careful examination of the testimony convinces me that the defendant's statement, that he paid $50 on account of

the purchase money, is not true. In his testimony he gives this account of the transaction : "I was intimately acquainted with Anthony Shroser. He came to me and told me there was a place for sale, and wanted me to buy it in partnership with him; it was the place of Timothy Keef that was for sale and which he proposed to me to buy; Shroser said, come, let us go and look at the place; then we went together and looked at it, and asked Timothy Keef how much he wanted for the place; he asked $2,100 for the place, he said; I made reply it was too much; it was too high, and I objected to buying on account of the price being too high. Anthony Shroser said we could not buy anything less on account of land being high; I said, we will go home and leave buying the place for a while; after a week, Shroser came again to me and says, we will buy the place for we can't get anything lower; I said to Shroser, I have not a great deal of money at the present time; Shroser made answer to me and said, pay what I ask of you and what you can; I paid $50 when the deed was made out; that was all Shroser asked me to pay at that time; nothing was said to me by Shroser about my not being able to pay more; I was not able to pay any other money at that time, and Shroser did not ask me to pay more; no arrangements were made between us that I was to pay any more; If Shroser had asked me for any more money, and I had had it, I would have paid more; he never asked me to pay any more on account of the property; he was to have his home with me on the place purchased, and was also to have his idle board with me; he was further to have his washing and mending done at my house, the same as myself." In his testimony he does not say, as he does in his answer, that in consideration of the agreement he was to be regarded as owner of half of the property. He says that Shroser told him he must furnish $50, because he, Shroser, lacked that sum to make up the amount of purchase money which was to be paid, and that he did so, and that thereupon Shroser said, "Let us go with the money and pay it and get the deed made to us both together." He says, too, that the

complainant had previously proposed to take the deed in the name of the defendant alone, saying it was not necessary to put his own name in it; but that he, himself, objected on the ground, as he says, that the complainant, in case of the defendant's death, would have no benefit of the property.

His wife testifies in reference to the alleged payment of the $50, and appears to contradict her husband as to his inability to pay more. Having said that the $50 were her own money, she says that she got the money from her husband's money, which, by his direction, had been sent to him from Germany; that Ignatz Choler paid it ($235) to him, about the time her husband bought the place, and that about that time her husband went down and got it. This is a different statement from that which is made by her husband, for he says that he had no more than $50. Her son, Frederick Sheir, who professes to have been present on the occasion of the contribution of the money, says that she brought out some money from the other room into the one in which he was, and handed it to Shroser; that Shroser and Isaacs sat by the table and counted it over together; that she said, here is your money, when she handed it to Shroser; that she got some money after that; he does not know how much; that she went into the same room to get the second lot of money, and brought it out; that she said, this second lot is our money; this is all we have got; that the second lot of money was put with the first lot, into one pocket-book; that Mr. Isaacs wanted to give the money to Shroser, and the latter told him to keep it, and he kept it, and they left the house together. Why, if her husband's statement be correct, that the $50 were contributed at the request of Shroser, she should have informed the latter that the $50 were the money of her and her husband, is not manifest, for, according to his statement, it was contributed as his money, at the request of Shroser. The complainant expressly swears that he furnished all of the $1,200, himself, and I find in this case much which leads me to give credit to him, rather than to the defendant and his witnesses.

But if it were conceded that the defendant did contribute the $50, that would not, of itself, even in connection with the fact that the title was taken in the name of him and the complainant together, lead unavoidably to the conclusion that he is entitled to half of the property. He himself says, in his answer and in his testimony, that the property was purchased in partnership. He says, in his testimony, that he did not pay more towards the purchase money because he was not asked to do so, and he adds that if he had been asked to do so he could not have done it, but that if Shroser had asked him to contribute more, and he had been able to do so, he would have done it. His step-son, Frederick Sheir, on this point says, that he was present at the conversation between the complainant and defendant in regard to purchasing the property. He says: "I heard Anthony Shroser say to Wesley Isaacs, come, let us buy the place together. Mr. Isaacs replied, the place is not enough for both of us to live on; I have not got so much money as you have. Shroser answered, I want my home with you; you go on the place and I want to stay with you. Isaacs said, I cannot pay much on the place; I cannot live in the house; I shall have to fix up the house and fences. Anthony Shroser said to Isaacs, you are afraid to buy the place because you are not fit as a farmer. Isaacs said he was afraid the place was a couple of hundred dollars too dear; you can buy a house for yourself and sell it again when you don't want it. Mr. Isaacs tried to persuade him not to buy it." If the purchase was in partnership, the interests of the parties in the property would be according to the money paid by them respectively.

The defendant claims to have paid only $50 out of the $1,200. It is proved that the complainant paid $400 of the principal of the mortgage, and that he paid all the interest on the mortgage up to the time when he was compelled to leave the property, although the defendant was bound with him in the bond, and with his wife had joined in the mortgage. Besides, in 1870 he paid the defendant $100, and in 1871, $137, to be applied to improvements upon the property,

and the money appears to have been applied accordingly. The claim that the defendant was to be equal owner of the property with the complainant, notwithstanding the disparity in their payments, rests wholly on the answer of the defendant. He does not so state in his testimony, and the only witness whom he adduces on that point, his step-son, Sheir, does not support his answer in this respect, but contradicts it. He says that what was said by the complainant in urging the defendant to join with him in the purchase was, "I want to make my home with you; you go on the place and I want to stay with you." The defendant's wife does not testify on the subject at all. To deprive the complainant of the benefit of any part of his payments upon the property, under the circumstances, the proof of gift should be clear and cogent. The agreement for furnishing the complainant his Sunday and "idle" board, and a home in case of his sickness or disability, appears to have been the consideration for the use of the property by the defendant for the benefit of himself and his family. The evidence given by the complainant and John George Harker, an entirely disinterested witness, not connected with either party, as to the violent treatment of the complainant by the defendant and his wife, is not overcome by the testimony of the defendant and his wife and children. The attempt to prove acts of indecency on the part of the complainant, and the unsupported and apparently wholly gratuitous imputation of criminal dishonesty made against the complainant by the defendant, are evidently afterthoughts, and cast discredit on the testimony of the latter.

This case resembles in its facts that of *Heyde* v. *Ehlers*, 2 *Stock.* 283. There land was bought with the money of Mrs. Heyde. The title was taken in the names of Mr. Heyde and Ehlers, the name of the latter being inserted in the deed with the view, as it appeared, to protecting in that way the rights of Mrs. Heyde in the property. A mortgage for part of the purchase money was made by Mr. Heyde and Ehlers. The latter had advanced money in connection with the prop-

erty. He denied in his answer the existence of a trust, and alleged that the property was purchased by him and Mr. Heyde; that he contributed $700 of his own money towards the payment of the purchase money, and that he was the owner in fee of an undivided half of the property. There was no written evidence of the alleged trust. The court decreed that there was a resulting trust in favor of Mrs. Heyde, and that Ehlers should convey to her accordingly, and that she should pay to him thereupon the money which he had paid in connection with the property.

The complainant in this case is entitled to a decree that the legal interest of the defendant in the property is held in trust for the complainant, and that the defendant release to him accordingly, on terms of payment by him to the defendant of all money paid by the latter for improvements upon the property and taxes paid up to 1871. Since that time the defendant has had the exclusive use of the property, and, under the circumstances, ought not to have an allowance for taxes or interest paid by him since then. I will not, however, hold him to account for the use of the property. There will be an account and a reference accordingly.